LAW OFFICE OF VENETIA K. CARPENTER-ASUI
A Law Corporation

VENETIA K. CARPENTER-ASUI     6901
Ocean View Center
707 Richards Street, Suite 717
Honolulu, Hawaii 96813
Telephone:  (808) 523-6446
Facsimile:   (808) 523-6727

Attorney for Plaintiff
ROBERT C. KOTELES, JR.

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| ROBERT C. KOTELES, JR., | ) | Civ. No. _____ |
| | ) | |
| Plaintiffs, | ) | VERIFIED COMPLAINT; |
| | ) | DECLARATION OF ROBERT |
| vs. | ) | C. KOTELES, JR.; DEMAND |
| | ) | FOR JURY TRIAL; |
| KAUAI ISLAND UTILITY | ) | SUMMONS |
| COOPERATIVE; JOHN DOES | ) | |
| 1-10; DOE ENTITIES 1-10; | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## VERIFIED COMPLAINT

ROBERT C. KOTELES, JR. (hereinafter "Plaintiff") by and through his attorney, complaining of KAUAI ISLAND UTILITY COOPERATIVE (hereinafter "Defendant") alleges and states:

## I.    JURISDICTION & VENUE

1.      There is federal jurisdiction of the claims against Defendant

pursuant to 28 U.S.C. ss 1331 and 1337.  This Court has jurisdiction over Plaintiff's claims against Defendant under the doctrine of pendant jurisdiction.

2.      Venue is proper in this District as both the Plaintiff and Defendant reside and conduct business in this District and the events and omissions giving rise to the Plaintiff's claims arose in this District.

## II.    <u>PARTIES</u>

3.      Plaintiff at all times relevant herein was a resident of the County of Kauai, State of Hawaii and an employee of Defendant.

4.      Defendant is a private business entity conducting business at 4463 Pahee Street, Suite 1, Lihue, Hawaii 96766-2000.

5.      Defendants JOHN DOES 1-10, DOE ENTITIES 1-10, are sued herein under fictitious names for the reason that their true names and identities are presently unknown to Plaintiff, except that they are persons and/or entities who are in some manner presently unknown to Plaintiff and engaged in the activities alleged herein; and/or persons who conducted some activity in a negligent and/or willful manner; which conduct was the legal cause of the injuries or damages to Plaintiff and/or were in some manner related to the previously named Defendant engaged in the activities alleged herein; and Plaintiff pray leave to insert their true names and capacities, activities and/or responsibilities, whether individual, business or governmental when the same is ascertained.  Plaintiff has been unable to ascertain the identities of these DOE Defendants through an examination of all documents available to him at this time.

6.      All Defendants will be collectively referred to as "Defendants."

## III.   FACTS

1.      Plaintiff is a Caucasian person.

2.      Plaintiff was hired by Defendant on March 28, 2005 as a journeyman lineman.  Plaintiff was originally assigned to Defendant's west side Eleele Service Center.  Prior to being hired by Defendant in 2005, Plaintiff had experience working in the electrical industry since 1976, twenty-nine years.

3.      Plaintiff observed that he was the only Caucasian non-management level employee working for Defendant on the west-side line crew on the island of Kauai.

4.      Plaintiff's duties and responsibilities as a journeyman lineman included, but were not limited to: performing construction and maintenance work on electric transmission and distribution facilities; working with, training, and directing the work of employees in lower classifications; inspecting, troubleshooting, and repairing transmissions, distributions, secondary and service systems; installing, removing, maintaining, and inspecting secondary lines, services and meters; and many others.

5.      In 2005 Plaintiff was not offered any overtime call-out work but the non-Caucasian employees were.  Because the non-Caucasian employees worked on overtime call-out assignments, they would continue to earn overtime pay when they reported for work each day.  In 2005 Plaintiff asked Defendant's Transmission and Distribution (hereinafter "T&D") Department Head Jack Levitt (Caucasian) why Plaintiff did not get called out for after hours overtime work.  T&D Department Head Jack Levitt said he would look into the matter.  Later, Defendant's T&D Supervisor Bernard Naea (Hawaiian) informed Plaintiff that if he wanted to

3

work overtime, he had to change from a journeyman lineman position to a troubleshooter position. Troubleshooter is a higher paid position (about $1.00 more per hour), but it requires 24/7 on-call status for two weeks in a row. The other non-Caucasian employee linemen were allowed to work overtime call-out without changing from a lineman position to a troubleshooter position. As a result of the unfair overtime work distribution between non-Caucasians and Plaintiff as the only Caucasian, Plaintiff was paid less money than non-Caucasian linemen.

6.     On or about September 28, 2005 Plaintiff successfully passed his six (6) month probation period.

7.     In early 2007, Plaintiff was sixty-five feet (65') up in the air in a bucket truck repairing a transmission switch arm on Loop Road, Wailua, Kauai, Hawaii. T&D Supervisor Bernard Naea returned to the job site with a pipe to replace the switch Plaintiff was repairing, which turned out to be the wrong replacement pipe. T&D Supervisor Bernard Naea got very angry upon realizing that he had brought the wrong pipe, and grabbed his front crotch and said, "I got you fucking hanging right here" then he yelled and screamed at Plaintiff because T&D Supervisor Bernard Naea had showed up with the wrong replacement pipe, which was not Plaintiff's fault. This incident was witnessed by Foreman Jerry Tittle (Caucasian) and Lineman Brian Setty (Caucasian). This sexual harassment at work by a superior made Plaintiff feel physically sick.

8.     On or about Thursday, October 18, 2007 about 3:00 p.m. Plaintiff was sitting against the front bumper of his work truck at the Kapaa Baseyard. T&D Supervisor Bernard Naea walked in front of Plaintiff and stopped about twenty feet (20') away at a dumpster, removed his penis from

4

his pants, and urinated against the dumpster saying "I'm gonna go home and get on my man-boy network and get a little boy." This incident was witnessed by Lineman Kahuwila Kanakaole (Hawaiian), and possibly others. This sexual harassment at work by a superior made Plaintiff feel physically sick.

9. The next day, on or about Friday, October 19, 2007 when Plaintiff reported for work, he informed Kapaa Baseyard Supervisor Soni Tupou (Tongan), Lineman/Union Steward William Workman (Hawaiian/Portuguese) about the incidents above involving T&D Supervisor Bernard Naea. They referred Plaintiff to Defendant's Human Resource Office.

10. On Friday, on or about October 26, 2007 Plaintiff met with Human Resource Supervisor Sheryl Grady (Japanese), Human Resource Administrator Jackie Cachero (deceased/Filipino), and Safety Manager Randy Alcott (Caucasian) about the incidents above involving T&D Supervisor Bernard Naea. They related they would investigate Plaintiff's report about T&D Supervisor Bernard Naea.

11. On or about Friday, November 16, 2012, Defendant's Human Resource Administrator Jackie Cachero summoned Plaintiff into a meeting and stated, "Bernard was found to have acted inappropriately of sexual misconduct on several occasions, and then she instructed Plaintiff to see Gary M. Farkas, PhD on the island of Oahu, twice.

12. On or about Monday, December 17, 2007 Defendant's Safety and Maintenance Supervisor Mitchell Oishi (Japanese) arrived at the Kapaa Baseyard gate and Foreman Jerry Tittle stated "hey Japanee". Safety and Maintenance Supervisor Mitchell Oishi stated, "hey, Bobby [Plaintiff], isn't

that harassment?"  Plaintiff said nothing.  Safety and Maintenance Supervisor Mitchell Oishi stated to Foreman Jerry Tittle "watch at you say around Bobby [Plaintiff] or he'll call and say its harassment.  He's sensitive and I can't call him a Haole, and you can't call me a Japanee."

13.    On or about Thursday, December 20, 2007 Plaintiff reported to Lineman /Union Steward William Workman (Portuguese/Hawaiian) the incident in paragraph #12 above and the fact that his reports about T&D Supervisor Bernard Naea were supposed to be confidential, now Plaintiff had everyone laughing at him about it.  Lineman /Union Steward William Workman replied, "you made trouble for everyone by saying something about Bernard Naea to H.R.  Fucken Haole's come here, open their fucken mouths, you should keep your mouth shut or go back to the mainland, and I don't want to here no more."  Plaintiff did not reply.

14.    On or about December 2007 and January 2008 Plaintiff flew to Oahu, while on duty, to be evaluated by Gary M. Farkas, PhD.

15.    On or about mid-2010 at lunch one day, Foreman Jon Ludington (Polynesian) bragged to the crew that he attended a rodeo the past weekend and slapped the Director of the Rodeo in the head, and beat some guy up and his wounds were so bad that they had to Medivac him to Oahu for medical treatment.  Foreman Jon Ludington was arrested for the beating.  Plaintiff believes that Foreman Jon Ludington told Plaintiff this story to frighten Plaintiff and keep Plaintiff in his place.

16.    On or about August 2010 Foreman Jon Ludington was angry and yelled at Foreman Chris Acoba (Filipino/Hawaiian) "I've had enough of your shit, I will beat your ass, I don't need this fucken job, I'll kill you right now!" and slapped Foreman Chris Acoba in the head.  Foreman Chris Acoba

6

kept saying, "that's enough, I don't want to fight."  Plaintiff, Lineman Timmy Medeiros and Lineman Fred Laborte (Filipino/Caucasian) witnessed this threat and assault.  Plaintiff reported the above to Eleele Baseyard Supervisor Soni Tupou, Human Resources Lisa Ubay (Filipino), and Safety Supervisor Randy Alcott, who just laughed and denied that it occurred.

17.    On or about November 2010 Eleele Baseyard Supervisor Soni Tupou summoned Plaintiff into a meeting in his office and threatened, "someone on the crew said you should be taken off the crew because you are nothing but trouble, keep your mouth shut, and don't trust anyone on the crew."

18.    On or about Friday, February 4, 2011 Eleele Baseyard Supervisor Soni Tupou instructed the crew (Foreman Jon Ludington, Lineman Timmy Medeiros, Lineman RJ Quinsaat, Lineman Greg Perreira, Lineman Fred Laborte, and Plaintiff) to clean the Eleele Baseyard and make a pile of the copper wire.  Plaintiff asked Eleele Baseyard Supervisor Soni Tupou what he was going to do with the copper wire.  Eleele Baseyard Supervisor Soni Tupou replied, "we are giving it to a couple from Connecticut."  Plaintiff informed Eleele Baseyard Supervisor Soni Tupou that he spoke to an apprentice in Connecticut who stated that they were buying copper wire for $3.65 per pound there.

19.    On or about Saturday, February 5, 2011 at about 8:00 a.m. Foreman Jon Ludington instructed Plaintiff, Lineman Timmy Medeiros (Portuguese/ Japanese), Lineman RJ Quinsaat (Filipino), and possibly Lineman Greg Perreira (Portuguese) to load Defendant's pallets and barrels of copper wire stored at the Eleele Baseyard onto a privately owned white rack truck - per Eleele Baseyard Supervisor Soni Tupou.  Foreman Chris

Acoba opened the gate to allow the employees to load the private vehicle driven by a dark skinned male non-employee with the copper wire.  It took about an hour to load the truck using a forklift.

20.     On or about Thursday, February 10, 2011 Plaintiff attended a company wide meeting at the Kauai Convention Center in Lihue, Hawaii. During the meeting, someone submitted a card asking about the theft of the copper wire on or about Saturday, February 5, 2011 from the "east" side yard which was read out loud by T&D Department Head Jack Leavitt, who said he would "look into it".  Apparently, the copper wire was taken from both the west side (Eleele Baseyard) and east side (Kapaa Baseyard).

As Plaintiff left the meeting, he stated aloud to the meeting attendees including Lineman Timmy Medeiros, "maybe that's the wire we loaded with the forklift on Saturday."  While driving home, Plaintiff called Lineman Brian Setty and asked if he submitted the card about the theft of the copper wire, he said he did not but maybe Art [Troubleshooter Art Cordoba] did. Next, Plaintiff telephoned Foreman Chris Acoba and asked where the copper wire went that they loaded onto the white truck on or about Saturday, February 5, 2011, and he said he did not know anything.

Next, Plaintiff telephoned Troubleshooter Art Cordoba and asked him if he submitted the card in the meeting asking about the copper wire, and he said he did and he wanted to know who was getting the money for all the copper.  Plaintiff stated the he did not know about the east-side yard, but he was instructed to load a truck load of copper a few weeks ago on a Saturday, and that Eleele Baseyard Supervisor Sony Tupou knows because he organized it and had the workers load it onto the private truck with a forklift.

8

21.    On or about Friday, February 11, 2011 at about 8:00 a.m.
Plaintiff asked Defendant's Warehouse Worker Lyle Sagawa (Japanese) who
got the money for the copper wire that was in his warehouse in wooden
boxes that were all stripped and cleaned.  Defendant's Warehouse Worker
Lyle Sagawa did not answer.  Plaintiff asked who brought the copper wire
from his warehouse to the Eleele Baseyard on pallets and in 55 gallon drums
filled with copper wire.  Defendant's Warehouse Worker Lyle Sagawa
looked stunned and shocked and just pointed outside and said "Lenox" (a
recycling company.  Lineman Fred Laborte witnessed this exchange.

22.    On or about Friday, February 11, 2011 at about 10:00 a.m.
Defendant's Eleele Baseyard Supervisor Soni Tupou telephoned Plaintiff on
his personal cellular telephone and stated "don't say anything to anyone, it's
just the east side, so don't say anything, and tell Chris to say that he was just
there to open the gate."  Foreman Chris Acoba was right next to Plaintiff, so
Plaintiff told him what Eleele Baseyard Supervisor Soni Tupou said.
Foreman Chris Acoba stated, "I don't know anything and I'm not saying
anything."

23.    On or about Friday, February 11, 2011 at about 12:00 p.m.
Plaintiff was sitting at a lunch table under the pavilion by Hanapepe Tennis
Court with Foreman Jon Ludington, Troubleshooter Kanani Malama,
Lineman RJ Quinsaat, and Lineman Timmy Medeiros.  Troubleshooter
Kanani Malama stated, "none of the scrubs showed up at the company
meeting."  Foreman Jon Ludington replied, "ya, all the fucken Haole's."
Troubleshooter Kanani Malama stated, "no more Haoles as Board Members,
they just make trouble", and "we gotta get rid of that Haole David Bissel."
Plaintiff felt sick listening to the racist statements, and was the only

Caucasian at the table, and the only Caucasian assigned to work at the
Eleele Baseyard. After awhile, Plaintiff got up to go and sat in the truck.
Plaintiff left work early that day to get his CDL physical with Lisa
Splittstoesser, MD.

24.   On or about Friday, February 11, 2011 at about 5:00 p.m. while
Plaintiff was driving home for his physical, Troubleshooter Art Cardoza
telephoned Plaintiff and stated, "Soni  confessed to taking copper wire for
beer money for the boys." Plaintiff replied, "Soni called me and Timmy this
morning and told me don't say anything. I don't know what he said to
Timmy or Chris." Troubleshooter Art Cardoza and Plaintiff agreed that
Defendant was out of control, and they did not trust anyone in the company.

25.   On or about Saturday, February 12, 2011 Plaintiff felt sick with
a stomachache and his nerves were frazzled. Plaintiff was very concerned
that Defendant's employees including someone as high ranking as the Eleele
Baseyard Supervisor Soni Tupou, and possibly higher, were involved in
theft of copper wire that belonged to Defendant's cooperative members.
Furthermore, by ordering Plaintiff and his co-workers to load the stolen
copper wire onto the private truck may ultimately result in Plaintiff being
charged as an accessory to the crime, or as a conspirator to the crime.
Plaintiff wondered if he should hire a criminal defense attorney, and worried
about the safety of his wife and children.

26.   On or about Sunday, February 13, 2011 Plaintiff's stomach was
still very upset and he was suffering from diarrhea, nervousness, insomnia
and fear. Plaintiff worried about being questioned by the police for the
copper theft which surely was a felony due to the amount of the copper wire
that was stolen. Plaintiff was fearful that his wife and children would be

hurt if he answered questions from the police. Plaintiff was so fearful that he started having shakes, heart palpitations, shortness of breath and called to his wife for help. Plaintiff believed he was having a heart attack. Plaintiff's wife drove Plaintiff to the Wilcox Hospital Emergency Room where he was kept for hours under observation and to administer tests. The whole time, Plaintiff worried that he may go to jail for his role in loading the copper wire to be stolen, and thought of hiring an attorney, but was afraid to hire anyone on the island of Kauai, for fear that his family could be retaliated against.

27.    On or about Monday, February 14, 2011 Plaintiff called in sick to Defendant's Eleele Baseyard Supervisor Soni Tupou, but asked to take a vacation day because he was previously scolded for calling in sick. Eleele Baseyard Supervisor Soni Tupou threatened, "I hope you're not taking the day off if it has to do with the copper incident, I took care of it, it's just the east side anyways. Keep your mouth shut and don't trust anybody."

28.    On or about February 25, 2011 Plaintiff filed a workers compensation stress claim and handed the original form to Safety Manager Randy Alcott on that same date. Defendant never processed Plaintiff's claim. Defendant's Human Resource Manager Lisa Ubay told Plaintiff that she would process his claim as an FMLA claim instead of a workers' compensation claim because "I don't want to make a big mess and get everybody all involved. It will be easier this way."

29.    On or about January 31, 2012 Plaintiff again asked Defendant's Human Resource Manager Lisa Ubay about the status of his workers' compensation case that he hand-delivered to Safety Officer Randy Alcott on or about February 25, 2011. Defendant's Human Resource Manager Lisa

Ubay replied, "I thought you settled with Liberty Mutual."

30.     In a letter dated March 8, 2011 Defendant's Human Resource Supervisor Lisa Ubay acknowledged Plaintiff's complaints about "workplace interactions with co-workers at the Eleele Service Center, specifically John Ludington.  If you would like the Company to investigate your concerns to determine whether there has been a violation of KIUC policies, including our policy against harassment, please contact me immediately.  The Company will conduct a prompt and thorough investigation and take appropriate action to stop prohibited conduct, if applicable.  We prohibit any retaliation against employees who raise their good-faith concerns to us..."

31.     In a letter dated May 31, 2012 Defendant's Human Resource Supervisor Lisa Ubay wrote, "the Company has investigated your claim that you were subjected to a hostile work environment ... [which] took the form of intimidation, harassment, discrimination and threats against you as a 'troublemaker' and 'Haole boy.'"  You claimed that management failed to correct this issue.  These allegations are set forth in the WC-5 that you submitted on January 31, 2012... [Defendant] was not able to confirm your allegations...."

32.     Plaintiff was out of work from on or about February 11, 2011 until on or about May 2011 on workers' compensation leave.

33.     From on or about early 2005 through on or about February 28, 2013, Plaintiff was subjected to race harassment including, but not limited to: daily being called "stupid Haole" "fucken Haole" "go back to the mainland" "go back to Connecticut" and many others.  Plaintiff also had to listen to his co-workers and supervisors say about other Caucasian people:

"Haole's are dirty" "Haole's are no good" "Haole way is no good" "Haole's come here and take all our jobs" "look at that Haole" "that's how the Haole's do it on the mainland" "its the Haole way" "Haole's are the only ones who complain" "fucken Haole's always complaining (customers)", "Haole's got big mouths" and many others.

34.    Plaintiff's doctors diagnosed him as suffering from panic attacks, stress, anxiety, depression, worry, fear, insomnia, diabetes, weight gain, headaches, stomach aches, bleeding hemorrhoids, and many others.

35.    From on or about March 2011 through on or about January 2013 Plaintiff reported the race harassment/hostile work environment in the workplace that he was subject to, to:

      a.     Human Resource Officer Lisa Ubay

      b.     New Project Manager Kerry Kodai

      c.     Eleele Baseyard Supervisor Soni Tupou

      d.     Safety Manager Randy Alcott

      e.     others

however no one did anything to stop the harassment/hostile work environment.

36.    From on or about  May 2011 through on or about February 28, 2013 Plaintiff continued to be subjected to race harassment which created a hostile work environment and made Plaintiff physically and emotionally ill.

37.    From on or about May 2011 through on or about February 28, 2013 Plaintiff continued to be excluded from call out work/overtime pay which the non-Caucasian linemen received, unless it was a holiday and the non-Caucasian linemen did not want the job.

38.    From on or about 2005 through on or about February 28, 2013

13

Plaintiff was observed numerous HIOSH and OSHA violations in the workplace including but not limited to:

a.   no tailboard meetings held, yet employees forced to sign form stating tailboard was held,

b.   improper grounding of de-energized lines,

c.   no air brakes in trucks,

d.   Soni Tupou drunk at work and driving drunk,

e.   Soni Tupou instructing Plaintiff to bring beer to him on a quad which he drank on duty,

e.   Soni Tupou driving with beer in work truck drinking all day long,

f.   Soni Tupou forcing employees to spread top soil at his residence while they were on duty with Defendant,

g.   delivering telephone poles to Soni Tupou's friends while on duty with Defendant,

h.   Soni Tupou stealing copper wire from Defendant,

i.   Soni Tupou stealing gasoline from Defendant,

j.   Soni Tupou denying employees company ice so that he can take it home for his personal use,

k.   failing to maintain company trucks,

l.   Soni Tupou has non-employees riding in company vehicles while he is drunk on duty,

m.   Soni Tupou left Plaintiff one hundred foot (100') in the air in a bucket truck cutting trees above energized lines, with no journeyman observer on the ground while he was drinking with other employees on duty;

14

n.    energizing conductor with no insulator,

o.    Foreman Chris Acoba allowing lineman to dead end primary wire, and energize it with no insulator, so 7,200 volts went to ground and shut down Lihue power,

p.    employee not wearing gloves in primary zone,

q.    Soni Tupou extorting beer from contractors (witness James Boldt) before he would finish their contract work,

r.    Safety Officer Randy Alcott would take monetary bets from the office personnel in Lihue on how long the female Safety Officer Jennifer Meske would last on the job, and

s.    many more.

39.   Plaintiff reported the above violations of law, rule, ordinance, regulation, etc. to Defendant's:

a.    Mechanic Clifford Sato

b.    Supervisor Soni Tupou

c.    Human Resource Cheryl Grady

d.    Safety Officer Randy Alcott

e.    Human Resource Lisa Ubay

f.    Foreman Chris Acoba

g.    Foreman Jon Ludington

h.    Foreman Hipo Princena

i.    Foreman Jerry Tittle

k.    Foreman Kenny Yamamoto

l.    Supervisor Bernard Naea

m.    CEO Randy Hee

15

n.   Administrator Human Resource Jackie Cachero

o.   Third Party Auditors/Investigators

p.   Al-Tech Mechanics

q.   Billy Workman

r.   Patrick Kanani Malama

39.   On or about early 2013 several dangerous incidents occurred at work because there was no sober supervisor overseeing the work:

a.   January 2013 there was a flash on the North Shore due to electrical wires making contact and a lineman went to the hospital,

b.   January 2013 the line crew ripped the electrical line off the telephone pole which blew up the transformer causing an isolated power outage in Kalaheo, and

c.   February 5, 2013 the line crew blew the electrical line which caused a major power outage in Lihue.

40.   After the above avoidable safety incidents, on or about February 27, 2013, and in retaliation for whistleblowing, Plaintiff was summoned into the office by Eleele Baseyard Supervisor Soni Tupou and Troubleshooter/Shop Steward Patrick Malama and falsely accused of being a "problem" and was falsely blamed for the above dangerous safety incidents at work.  Plaintiff went back out of work on workers' compensation stress leave on the same day.

41.   Plaintiff continues to be treated by his treating doctors for panic attacks, stress, anxiety, depression, worry, fear, insomnia, diabetes, weight gain, headaches, stomach aches, bleeding hemorrhoids, and many others.

42.     On or about Friday, April 12, 2013 Plaintiff delivered a medical certificate to Defendant's Human Resource Coordinator Pia Gregario from Robert Brown, PhD which stated, "Mr. Koteles is being released back to work effective April 15, 2013 contingent on that he not work for the same employer." Ms. Gregorio asked Plaintiff, "are you quitting?" Plaintiff answered, "no, I need to work another ten years."

43.     On or about Monday, April 15, 2013 Plaintiff received a letter from Defendant's Human Resource Coordinator Pia Gregario wrote that Plaintiff "voluntarily resigned" which was not true. Plaintiff was shocked because at no time did he resign from his job with Defendant. Plaintiff alleges that he was discharged by Defendant.

44.     On or about Tuesday, April 16, 2013 Plaintiff received a telephone call from Defendant's Human Resource Coordinator Pia Gregario who said, "I'm sorry, they made me send the letter."

45.     On or about September 20, 2013 Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") under EEOC No. 486-2013-00481, which was dual filed with the Hawaii Civil Rights Commission ("HCRC") under FEPA No. K-17776, for race discrimination and disability discrimination.

46.     On June 25, 2014 the EEOC issued a right to sue letter to Plaintiff.

47.     On July 14, 2014 the HCRC issued a right to sue letter to Plaintiff.

48.     On July 29, 2014 Plaintiff filed a timely lawsuit within 90 days of the EEOC and HCRC right to sue letters.

## COUNT I

(Title VII of the Civil Rights Act of 1964, as amended, 42 USC 2000(e) et.

seq., and s378-1 and s378-2 Hawaii Revised Statutes --

race discrimination)

49.    Plaintiff repeats and realleges each and every allegation set

forth in paragraphs 1 through 48 above as though fully set forth herein.

50.    Defendant violated Plaintiff's rights under Title VII of the Civil

Rights Act of 1964, as amended, 42 USC 2000(e) et. seq., - race

discrimination.  Plaintiff belongs to a protected class - Caucasian persons;

Plaintiff was qualified for his positions as journeyman lineman; Plaintiff

suffered adverse employment actions (i.e.: denied after hours work,

workplace harassment, discharge), and similarly situated individuals outside

of Plaintiff's protected class (non-Caucasians) were treated more favorably,

or other circumstances surrounding the adverse employment action give rise

to an inference of discrimination.

51.    As a direct result of Defendant's actions and/or inactions,

Plaintiff suffered damages to be proven at a trial herein.

## COUNT II

(American's With Disabilities Act of 1990, 42 USC s12101 et seq. (2000)

("ADA"), and s378-1 and s378-2 Hawaii Revised Statutes --

disability discrimination)

52.    Plaintiff repeats and realleges each and every allegation set

forth in paragraphs 1 through 51 above as though fully set forth herein.

53.    The actions, conduct and inaction of Defendant as aforesaid,

constitutes illegal discrimination against Plaintiff who (a) is a disabled person within the meaning of the ADA; (b) he is a qualified individual able to perform the essential functions of his job with (or without) reasonable accommodation; and (c) he suffered an adverse employment action (termination) because of his disability.

54. In the alternative, Plaintiff may have an impairment that is not substantially limiting but was regarded by Defendant as disabled and suffered an adverse action because of the perceived disability.

55. As a direct and legal result of the wrongful actions and conduct of Defendant, Plaintiff has suffered severe emotional and mental distress, humiliation and embarrassment, loss of job benefits, opportunities and compensation, together with such other and further general and special damages as will be shown at trial.

## COUNT III

(Sec. 378-62 Hawaii Revised Statutes ("HRS") Hawaii Whistleblowers' Protection Act)

56. Plaintiff repeats and realleges each and every allegation set forth in paragraphs 1 through 55 above as though fully set forth herein.

57. Defendant violated Plaintiff's rights under the Hawaii Whistleblowers' Protection Act ("HWPA") chapter 378-62, HRS by retaliating against Plaintiff for reporting violations or suspected violations of a law, rule, ordinance, or regulation, adopted pursuant to a law of this State, a political subdivision of this State, or the United States, or a contract executed by the State, a political subdivision of the State, or the United States, to Defendant as detailed above.

58.   As a direct result of Defendant's actions and/or inactions, Plaintiff suffered damages to be proven at a trial herein.

WHEREFORE, Plaintiff prays as follows:

a.   That Plaintiff be awarded compensatory damages, assessed jointly and severally against all Defendants, in an amount to be determined at trial;

b.   That Plaintiff be awarded special damages, assessed jointly and severally against all Defendants, in an amount to be determined at trial;

c.   That Plaintiff be awarded attorney's fees and litigation expenses of filing and prosecuting this lawsuit;

d.   That Plaintiff be awarded exemplary or punitive damages assessed jointly and severally against all Defendants; and

e.   That Plaintiff be awarded such other and further relief as this Court deems necessary and proper.

DATED:  Honolulu, Hawaii, _____, 2014.

_____
VENETIA K. CARPENTER-ASUI
Attorney for Plaintiff
ROBERT KOTELES, JR.